UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| **BOBBIE JEAN COMBS,**<br>     **Plaintiff,**<br><br>v.<br><br>**KILOLO KIJAKAZI,**<br>**Acting Commissioner of Social Security,**<br>     **Defendant.** | **CIVIL ACTION NO. 7:20-142- KKC**<br><br><br>**OPINION AND ORDER** |

*** *** ***

Plaintiff Bobbie Jean Combs brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her claim for disability insurance benefits. The Court, having reviewed the record, will affirm the Commissioner's decision.

This Court's review of the decision by the Administrative Law Judge ("ALJ") is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir.2009).

In denying Combs' claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act (the "Act"). 20 C.F.R. § 404.1520(a)-(e). *See, e.g., Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that Combs has not engaged in substantial gainful activity since June 14, 2018. (Administrative Record ("AR") at 20.)

At step two, the ALJ determined that Combs suffered from the severe impairments of degenerative disc disease of the cervical spine, lumbar radiculopathy, degenerative joint disease of the right hip, anxiety, depression, and resting tremors. (AR at 20.)

At step three, the ALJ found that Combs does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR at 21.)

Before proceeding to step four, the ALJ determined that Combs has the residual functional capacity (RFC) to perform "light" work as defined in 20 CFR 404.1567(b) except that:

> she can frequently climb ramps and stairs. She can occasionally climb ladders, ropes, or scaffolds. She can frequently stoop, kneel, crouch, and crawl. She can frequently reach overhead bilaterally. She can frequently be exposed to vibration, unprotected heights, and dangerous, moving machinery. Mentally, she can understand and remember simple instructions and procedures. She can sustain attention and concentration to complete simple tasks with regular breaks every two hours during an eight-hour workday. She can interact frequently with supervisors and coworkers for task completion and can interact occasionally with the public. She can adapt to routine work conditions and occasional workplace changes that are gradually introduced.

(AR at 23.)

At step four, the ALJ determined that Combs is unable to perform any past relevant work. (AR at 27.)

At step five, the ALJ determined that, considering the RFC described above and Combs' age, education, and work experience, there are jobs that exist in significant numbers in the national economy that Combs can perform and, thus, she is not disabled. (AR at 27-28.)

In making this finding, the ALJ noted Combs' testimony and the function reports completed by her that indicated she prepares meals, performs household chores, drives, grocery shops, visits with her friend, and attends her son's baseball games when able. (AR at 23-24.) The ALJ noted that Combs reported she can lift 10 to 15 pounds. (AR at 24, 266.) The ALJ also

2

noted medical evidence indicating that Combs suffered mild to moderate degenerative changes of the cervical and lumbar spines and mild degenerative joint disease in the right hip. (AR at 24.) The ALJ also considered that Combs' physical and neurological exams were "generally unremarkable" indicating normal gait and station, normal strength, normal range of motion, normal sensation, and normal reflexes. (AR at 24.) The ALJ noted evidence of a nonessential tremor that was almost completely resolved with medication. (AR at 24.)

The ALJ found persuasive the opinions of the state agency psychological consultants, who found Combs had only moderate limitations in mental functioning. (AR at 25.) The ALJ also found persuasive the opinions of the state agency medical consultants. They determined that Combs could perform a range of light work and that there was no evidence that she had been diagnosed or treated for multiple sclerosis (MS) or rheumatoid arthritis (RA). (AR 26.) The ALJ found these opinions were consistent with the generally unremarkable physical exams. (AR 26.)

Combs argues that the ALJ erred in finding that she does not suffer from MS or RA. The ALJ found:

> The claimant alleged that she has multiple sclerosis and rheumatoid arthritis. However, there is no evidence of diagnosis or treatment for these conditions. She has seen multiple neurologists and no one has diagnosed her with multiple sclerosis. She claimed that her primary care provider, Dr. [Ricky] Collins, took her off work because of multiple sclerosis. However, even Dr. Collins, who is not a neurologist and whose opinions were grossly inconsistent with the objective medical evidence, refused to answer whether he thought the claimant had multiple sclerosis and how he made that diagnosis (21F p.2). His records indicate that the diagnosis was never confirmed (5F p.27, 13F p.4). The claimant herself has admitted that the diagnosis was never confirmed (8F p.2). Records also indicate that her arthritis workup was only positive for antinuclear antibodies (ANA); the tests for rheumatoid factor (RF), sedimentation rate, and rapid plasma reagin (RPR) were all negative (5F p. 20). Consequently, the undersigned finds that these alleged impairments are not medically determinable.

3

(AR at 21.)

Combs argues that her treating physician Dr. Collins diagnosed her with MS. Dr. Collins, who is not a neurologist, did complete a form titled "Multiple Sclerosis Residual Functional Capacity Questionnaire." (AR at 854.) However, on that form, he did not answer the question, "Does your patient have multiple sclerosis?" Nor did Dr. Collins fill in the blank that asked how the MS diagnosis was made. Further, as the ALJ noted, Dr. Collins' treatment notes state that Combs "was told that she possibly had MS but this [has] not been confirmed." (AR at 470.) He noted that Combs had "been seen by several neurologists with no real diagnosis."  (AR at 470.)

Combs also argues that another treating physician, Dr. Chih J. Yen, diagnosed her with MS and treated her for that condition. Dr. Yen, however, is not a neurologist. She is a podiatrist (DPM). Her notes do indicate an assessment of MS. However, that appears to be based simply on Combs telling Dr. Yen that she "was diagnosed ms 4-5 years ago while she was working in North Carolina as a nurse. . . . " (AR at 739.) Combs points to no neurological or lab testing that Dr. Yen or any other doctor performed that led to an MS diagnosis.

Because Combs points to no evidence in the record that she has been diagnosed with MS or RA by a qualified physician, the Court cannot find that that the ALJ erred in finding that no such diagnoses exist.

Combs argues that the ALJ erred in disregarding the opinion of consultative examiner Dr. L. Brian Barnett, who opined that Combs could stand for only 15 minutes, walk less than a city block before resting and that she could not lift over five pounds, carry objects, or drive. (AR at 669.) The ALJ supported her treatment of Dr. Barnett's opinion by citing substantial evidence. The ALJ found Dr. Barnett's opinion "unpersuasive" because it was not consistent with the

4

objective medical evidence or Dr. Barnett's own examination of Combs. (AR at 26.) The ALJ found no evidence in the record that Combs had any significant limitations in standing, walking, lifting, carrying, or balancing. Further, the ALJ noted that Combs had herself testified that she drives two times a week. (AR 26, 39.) In her function report, Combs stated that she can lift 10 to 15 pounds. Combs points to no objective medical evidence that requires Dr. Barnett's limitations.

Combs argues that the ALJ erred in disregarding the opinion of treating physician Dr. Collins, who wrote many opinions for Combs. The most recent is the Multiple Sclerosis Residual Functional Capacity Questionnaire" discussed above and dated December 19, 2019. (AR 854.) Dr. Collins opined that Combs was incapable of working even a "low stress" job. (AR 857.) He further opined that Combs could sit and stand only 10 minutes at one time, that she could sit and stand for less than two hours in an eight-hour workday, and that she would need to take random breaks for "undeterminable" amounts of times throughout the workday. (AR 857-58.)

The ALJ found Dr. Collins' opinion "unpersuasive," finding that none of the "extreme limitations" were supported by the objective medical evidence. (AR 26.) The ALJ supported this finding with substantial evidence. She cited Dr. Collins' own records showing that Combs had a "normal range of motion, normal strength, normal gait, normal coordination, normal sensation, and normal reflexes for the vast majority of the relevant period." (AR 26.) The ALJ also considered Dr. Collins' notes indicating that Combs' tremors were much better and had almost completely resolved by taking medication. (AR 24, 467.)

Combs makes a cursory argument that the ALJ failed to address nerve conductions studies performed or her history of tremors. However, the ALJ noted an electromyography (EMG) conducted in January 2019, which indicated some radiculopathy in the lower lumbar spine. (AR at 25.) Further, the ALJ found that one of Combs' severe impairments was lumbar

5

radiculopathy. (AR at 20.) As to tremors, the ALJ did consider them but noted that Combs reported that they had resolved with medication. The ALJ did not find any evidence that the tremors would require greater limitations than she assessed in the RFC. Combs does not explain how any of this evidence would require greater restrictions on her ability to work than the ALJ found. The Court notes that the ALJ assessed an RFC that found Combs is capable of only a range of "light work."

Combs also makes a cursory argument that the ALJ failed to consider that she suffered from a small herniated disc and a rotator cuff tear. However, this evidence was not before the ALJ. Further, Combs does not explain how these conditions requires any greater restrictions on her ability to work than the ALJ found.

For all these reasons, **IT IS HEREBY ORDERED** that:

1. The plaintiff's motion for summary judgment (DE 18) is **DENIED**;
2. The defendant's motion for summary judgment (DE 19) is **GRANTED**;
3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and
4. A judgment will be entered contemporaneously with this order.

This 1st day of March, 2022.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY